# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————————

No. 00-3411

———————————

Pamela Riley,      *
     *
         Appellee,      *
     *      Appeal from the United States
       v.      *      District Court for the
     *      Southern District of Iowa.
Barbara Olk-Long; Jean Sebek,      *
     *
         Appellants.      *

———————————

Submitted: December 12, 2001
Filed: March 8, 2002 (Corrected 3/14/02)

———————————

Before MCMILLIAN, HEANEY, and HANSEN,[1] Circuit Judges.

———————————

HANSEN, Circuit Judge.

Barbara Olk-Long and Jean Sebek appeal from the district court's[2] order denying judgment as a matter of law and denying their motion for a new trial after a

———————————

[1]Judge Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

[2]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

jury found in favor of Pamela Riley in her failure to protect action under 42 U.S.C. § 1983. We affirm.

I.

This case arises out of the sexual misconduct of an employee under the supervision of Jean Sebek and Barbara Olk-Long at the Iowa Correctional Institution for Women (ICIW). Sebek was the ICIW security director for over 16 years. She was responsible for maintaining prison security and overseeing security staff, including the correctional officers. Barbara Olk-Long was the warden at the prison. As warden, Olk-Long monitored the daily operations of the prison, which included ensuring that adequate security measures were in place and making prison personnel decisions.

Pamela Riley was an inmate at the ICIW where she served time for a probation violation resulting from a forgery conviction. ICIW Correctional Officer Robert Link was employed by the prison during Riley's incarceration. Link's inappropriate activity with Riley began in October 1995 when he questioned Riley as to whether she was having a sexual relationship with her roommate at the facility and if so, could he watch. Approximately a week and a half later, Link approached Riley in her room after the prison lockdown had occurred. Prison policy prohibited officers from entering an inmate's room after lockdown except in the case of an emergency or a fire drill. Link attempted to reach under Riley's nightshirt but she backed away, causing Link to leave the room.

Link's impropriety toward Riley continued unabated. Shortly after the prison assigned Riley a new roommate, who was a known bisexual, Link commented "[w]hen's the show" after observing the two in their room together. (Tr. at 440.) Later that same evening, Link grabbed Riley from behind and rubbed up against her while grabbing her breasts. Riley spun around, attempting to extricate herself from

2

him, but Link still was able to kiss her. Riley did not report these incidents to prison officials because she doubted that she would be believed and feared the resulting discipline.

On November 21, 1995, Link entered Riley's room after he conducted a routine inmate headcount. Link began touching and kissing Riley over her verbal protests. Link then pulled down Riley's underwear and forcibly had intercourse with her. Riley testified that, at the time of the assault, she was afraid of becoming pregnant by Link's actions and wanted him to stop touching her. In an attempt to get Link to leave her room, Riley began performing oral sex on him. Shortly thereafter, Link became nervous and left Riley's room. Another inmate witnessed the sexual encounter between Link and Riley and reported what she saw to Sebek. Prison officials subsequently placed Riley on administrative segregation status while conducting their investigation.

The prison determined that Link had sexually assaulted Riley and issued Link a letter of termination on December 7, 1995. Link resigned prior to the effective date of his termination. Link was charged and later pleaded guilty to sexual misconduct with an inmate under Iowa Code § 709.16(1).

Prior to the sexual encounter between Link and Riley, several other inmates had complained of being the target of Link's sexual advances. Indeed, the evidence reveals that Link had a history of predatory behavior throughout his employment at the prison. Beginning in 1994, Link showed favoritism toward an inmate by sending her money and cards. Prison policy forbade inmates from receiving favors, gifts, clothing, or any other articles from staff members. An investigation into Link's favoritism was found inconclusive; no disciplinary action was taken against Link. In January 1995, two inmates reported to ICIW officials that Link had sexually assaulted them. Greg Ort, the program director at the ICIW, was in charge of conducting the investigations at the prison. Ort's subsequent investigation into the assaults proved

3

inconclusive; however, Link received a ten-day suspension as a result of his comment to an inmate threatening that he was going "to get the snitch" who alerted ICIW officials to his behavior. (Tr. at 238-39.) When he returned to work, ICIW officials reassigned Link to the prison control center where he had no direct inmate contact for three months. The prison collective bargaining agreement precluded Link from being permanently reassigned to the control center.

Link's inappropriate behavior resumed after he was released from control center duty and was assigned to an area where inmates were housed. In June 1995, a report surfaced that Link picked up a paroled inmate at a bus stop. The former inmate was on her way to a work release program in Sioux City, Iowa. Link allegedly took her to his home, engaged in sexual activity with her, gave her clothes, and drove her to Sioux City. Ort investigated but was unable to substantiate this claim because the former inmate failed to report to the residential correctional facility or to her parole officer, and Link denied that the event had occurred. However, Ort did learn that the former inmate never used her previously purchased bus ticket to Sioux City. Also in June 1995, Link made inappropriate comments to an inmate's mother about the size of her breasts. The mother failed to return Ort's phone calls, and his investigation proved inconclusive. During the time Ort was investigating the June 1995 incidents, he determined that Link failed to report witnessing another officer turning off the intercom to an inmate's room. The inmate subsequently escaped. Link received a 15-day suspension and a final warning of termination as a result of the intercom incident.

Riley filed this suit against Warden Olk-Long and Director of Prison Security Sebek, alleging violations of her Eighth Amendment right to be free from cruel and unusual punishment. The jury found in favor of Riley, awarding her compensatory damages of $15,000 and punitive damages of $5,000 against Sebek and $25,000 in punitive damages against Olk-Long. Sebek and Olk-Long filed motions for judgment as a matter of law, or, alternatively, for a new trial. The district court denied the

motions in a thorough posttrial order. Defendants now appeal, arguing that they did not consciously disregard a serious risk of harm to Riley and that they responded reasonably to mitigate any risk of harm posed by Link.

## II.

A district court's denial of a motion for judgment as a matter of law is reviewed de novo. Billingsley v. City of Omaha, 277 F.3d 990, 992 (8th Cir. 2002). We apply the same standard as the district court, viewing all the facts in Riley's favor and granting her all reasonable inferences. See United Fire & Cas. Co. v. Historic Pres. Trust, 265 F.3d 722, 726-27 (8th Cir. 2001). "Judgment as a matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1194 (8th Cir. 2001) (internal quotations omitted).

We conclude that the jury had sufficient evidence upon which to base its finding that Sebek and Olk-Long were deliberately indifferent to the risk that Link would assault a female inmate. An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [she] is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to [her] or because all prisoners in [her] situation face such a risk." Hott v. Hennepin County, Minn., 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that she is deliberately indifferent to an inmate's safety. Farmer, 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective,

5

rather than an objective, standard. Id. at 838-39; see also Jackson, 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendants'] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [she] must also draw the inference." Farmer, 511 U.S. at 837.

Defendants acknowledge that the sexual act at issue here is "sufficiently serious to amount to a deprivation of constitutional dimension." See Jensen v. Clarke, 94 F.3d 1191, 1197 (8th Cir. 1996). However, defendants contend that they were not deliberately indifferent to the risk that Riley would be sexually assaulted because neither could do anything further to protect her. Previously we have stated that "if a plaintiff presents evidence of 'very obvious and blatant circumstances' indicating that the defendant knew the risk existed, the jury may properly infer that the official must have known." Spruce v. Sargent, 149 F.3d 783, 786 (8th Cir. 1998). Here, Link was the subject of numerous investigations concerning his inappropriate behavior with inmates. Sebek acknowledges that she received copies of all the prison incident reports but contends that she was not directly involved in the investigation of Link nor was she involved in the decision to discipline Link. However, Sebek as security director, was aware and testified that sexual misconduct involving guards and inmates was a "big concern," and she was advised of the investigations into the allegations against Link during weekly meetings with Ort and Olk-Long. (Tr. at 17.) In her testimony Sebek stated that security decisions at the prison were collaborative between her, Olk-Long, and the other prison department directors. (Tr. at 173 ("[W]e all would work together and talk together and make decisions that way.").)

While several of the allegations against Link proved inconclusive upon investigation, Sebek testified that she was concerned that Link actually may have perpetrated the things that he was accused of doing and commented "[w]here there's smoke, there's fire," after repeatedly hearing Link's name surface in connection with prison investigations. (Tr. at 120.) Sebek admitted that Link's threat "to get the

6

snitch" could have been cause for termination; however Link was merely suspended after that incident. (Tr. at 92, 238-39.) Moreover, Sebek recognized that after the incident with the former inmate in June 1995, it would have been prudent to reassign Link to ensure that he had no further inmate contact and that his reassignment was the only way to protect the inmates. Sebek testified that she, Olk-Long, Ort, and the shift supervisors had the authority to reassign Link to an area without inmate contact. Indeed, Link was reassigned to the control center, but only for three months, after which he was recirculated back into the inmate population. We conclude that given her position as prison security director and her admitted awareness that Link was a problem guard, it was reasonable for the jury to find that Sebek knew that Link posed a substantial risk of harm to the female inmates at the prison by sexually assaulting them. Cf. Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996) (concluding police chief's statement that he "wouldn't doubt" that officer sexually assaulted victim was evidence of chief's knowledge and his failure to act under § 1983).

We turn now to Warden Olk-Long. Olk-Long contends that she did not believe that Link posed an actual threat to engage in sexual misconduct with inmates and that she did not have the ultimate decision-making authority as to the disciplinary actions that could have been taken against Link. Olk-Long further asserts that she acted reasonably when she concluded that the many allegations against Link were inconclusive. We disagree.

It is apparent that an excessive risk of harm to the inmates was known or obvious to Olk-Long. See Jackson, 140 F.3d at 1152. As prison warden, Olk-Long may be held responsible for a § 1983 violation if she was deliberately indifferent or tacitly authorized the offending acts. Andrews, 98 F.3d at 1078 (holding police chief's awareness of complaints against officer amounted to tacit indifference under § 1983). After Link's suspension in January 1995, Olk-Long admitted that she was concerned about Link's continued use of poor judgment when interacting with inmates and about the possibility that an inmate's safety was jeopardized while in his

7

company. Olk-Long, through Ort, even advised Link at the time of his second suspension that he should consider an alternative line of work. Despite her concerns and knowledge of the many incidents of Link's sexual misconduct, Olk-Long allowed Link to resume his prison duties, which included inmate contact that ultimately led to the assault on Riley. The jury reasonably could have found that Sebek discussed her concerns about Link with Olk-Long and could have inferred from the evidence that Olk-Long recognized that Link was a problem employee who posed a substantial risk of harm.

Defendants contend that they took reasonable measures to mitigate the risk of harm that Link posed to Riley, and therefore they are insulated from liability. See Farmer, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). When determining the adequacy of an official's response to a known risk to inmate safety, "deliberate indifference includes something more than negligence but less than actual intent to harm"; it requires proof of a reckless disregard of the known risk. Newman v. Holmes, 122 F.3d 650, 653 (8th Cir. 1997). Although the record indicates that defendants investigated the several reports filed against Link, Sebek and Olk-Long are not shielded from liability because their responses were not adequate given the known risk. Central to defendants' assertions in support of the reasonableness of their responses is the application of the prison collective bargaining agreement. Defendants contend that the collective bargaining agreement precluded the prison from either permanently assigning Link to an area without inmate contact or from assigning another employee to shadow Link. Furthermore, until the episode with Riley occurred, defendants believed that under the collective bargaining agreement, they had insufficient cause to terminate Link. Defendants cite the various unfounded investigations in support of their decision not to permanently remove Link from contact with the inmate population. The jury, however, reasonably could have found that Link was far too significant of a risk to be allowed unsupervised contact with

8

inmates.  Defendants were responsible for providing a safe environment for inmates at the prison, and in Riley's case, they failed to do so.  Accordingly, we conclude that the jury reasonably could have found that defendants were deliberately indifferent to a substantial risk of harm in violation of the Eighth Amendment.

III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.