DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court summary judgment in favor of the Board of Commissioners of Scioto County, Ohio (Commissioners) and Marty Donini, Scioto County Sheriff, (Sheriff), defendants below and appellees herein, on the claims brought against them by Jeffrey A. Ratcliff and Amy N. Ratcliff, plaintiffs below and appellants herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 {¶ 2} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANTS, COUNTY COMMISSIONERS OF SCIOTO COUNTY AND SHERIFF OF SCIOTO COUNTY, ON THE RESPONDEAT SUPERIOR ISSUE BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER A. MARK DARBY WAS AN EMPLOYEE OF THE COMMISSIONERS OR SHERIFF AND WHETHER HE WAS ACTING IN THE SCOPE OF HIS EMPLOYMENT."
SECOND ASSIGNMENT OF ERROR:
 {¶ 3} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANTS ON THE IMMUNITY ISSUE BECAUSE, AS A MATTER OF LAW, DEFENDANTS ACTIONS FALL WITHIN THE EXCEPTION TO POLITICAL SUBDIVISION IMMUNITY CONTAINED IN O.R.C. § 2744.02(B)(5)."
THIRD ASSIGNMENT OF ERROR:
 {¶ 4} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANTS ON THE IMMUNITY ISSUE BECAUSE O.R.C. § 2744 et seq., THE STATUTE INVOKED BY THE TRIAL COURT, IS UNCONSTITUTIONAL UNDER ARTICLE I, § 5 OF THE OHIO CONSTITUTION."
FOURTH ASSIGNMENT OF ERROR:
 {¶ 5} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANTS ON THE § 1983 ISSUE BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE DEFENDANTS WERE AWARE OF A PATTERN OF CONSTITUTIONAL VIOLATIONS, SUCH THAT THEIR FAILURE TO ACT CONSTITUTED DELIBERATE INDIFFERENCE TO PLAINTIFF'S CONSTITUTIONAL RIGHTS WITHIN THE MEANING OF MONELL AND ITS PROGENY."
 {¶ 6} On September 5, 1999, Appellant Jeffrey Ratcliff was visiting the "Anchor Pad" marina in Portsmouth when he had a "run in" with A. Mark Darby. At that time, Darby was employed as a bailiff for the Scioto County Common Pleas Court, as well as the court's chief probation officer. Accounts of this incident vary but, according to appellant, Darby walked up behind him and placed a handgun to the back of his head. Appellant turned around to look at Darby. Darby said nothing to appellant but had a "snickery" smile on his face. A bystander, Ronnie Crabtree, stepped in between the two men. Also, Darby's wife yelled for him to get into the car and to leave the scene. Darby complied and he and his spouse drove away.[1] Afterwards, Crabtree apparently told various people that Darby put a gun to appellant's head for no apparent reason.[2]
 {¶ 7} Appellant claims that he later contacted both the local police department and the county sheriff's office, but was told that Darby was impervious to criminal action because of his association with a common pleas court judge and the court. Appellant thereafter sought out-of-town counsel and, on August 9, 2000, commenced the action below. Appellant alleged that Darby committed the torts of assault, battery and the intentional infliction of emotional distress. He also alleged that at the time of the incident Darby was employed by both the commissioners and the sheriff. Appellant thus asserted that those entities were liable to him for Darby's actions under theories of respondeat superior, negligent/reckless supervision of an employee and a violation of civil rights pursuant to Section 1983, Title 42, U.S.Code. Appellant asked for both compensatory and punitive damages.[3] The county commissioners, sheriff and Darby all denied liability and asserted a variety of affirmative defenses.
 {¶ 8} On February 7, 2002, appellees moved for summary judgment. Specifically, appellees asserted that(1) Darby was not an employee of the commissioners or the sheriff, (2) even if Darby was so employed, he acted outside the scope of his employment, (3) in any event, appellees are immune from civil liability under R.C. 2744.01 et seq., and (4) the complaint failed to state a claim for a civil rights violation.
 {¶ 9} Appellants' memorandum contra argued that Darby was a county employee at the time of this incident and that he acted within the scope of his employment. On this latter point, appellants included an affidavit from John Welton who attested that Darby had told him that he pulled his gun on appellant because he mistakenly believed appellant to be a "probation violator." As to the immunity issue, appellants argued that (1) the county is not immune from "reckless and wanton" acts by employees; and (2) in any event, the immunity statute is an unconstitutional violation of their right to a jury trial. Finally, appellants argued that they set forth a cognizable claim for civil rights violation. They asserted that the evidentiary materials revealed that Darby had a "propensity to engage in wanton and willful conduct using his position as a bailiff and probation officer to coerce, threaten and assault" and that appellees took no steps to reign him in or control his actions.
 {¶ 10} On March 27, 2002, the trial court granted summary judgment in appellees' favor. In so doing, the court found that Darby was not employed by the county commissioners or the sheriff, that appellees are immune from liability[4] and that appellants had not alleged any set of facts that would constitute a cause of action under the "1983 Civil Rights Act." This appeal followed.[5]
 I {¶ 11} We begin our analysis of this case by noting the pertinent standard of review. It is well-settled that appellate courts review summary judgments de novo. See Broadnax v. Greene Credit Service (1997),118 Ohio App.3d 881, 887, 694 N.E.2d 167; Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 41, 654 N.E.2d 1327; Maust v. Bank One Columbus,N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765. In other words, appellate courts afford no deference to a trial court's summary judgment decision, see Hicks v. Leffler (1997), 119 Ohio App.3d 424, 427,695 N.E.2d 777; Dillon v. Med. Ctr. Hosp.(1993), 98 Ohio App.3d 510,514-515, 648 N.E.2d 1375; Morehead v. Conley (1991), 75 Ohio App.3d 409,411-412, 599 N.E.2d 786. Thus, appellate courts must conduct their own independent review to determine if summary judgment was appropriate.Woods v. Dutta (1997), 119 Ohio App.3d 228, 233-234, 695 N.E.2d 18;Phillips v. Rayburn (1996), 113 Ohio App.3d 374, 377, 680 N.E.2d 1279;McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 241,659 N.E.2d 317.
 {¶ 12} Summary judgment under Civ.R. 56(C) is appropriate when the movants can demonstrate that (1) there are no genuine issues of material fact, (2) they are entitled to judgment in their favor as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. The non-moving party is entitled to have the evidence construed most strongly in their favor.Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370,696 N.E.2d 201; Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385,667 N.E.2d 1197; Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46. We further note that the parties moving for summary judgment are the ones who bear the initial burden of demonstrating that there exists no genuine issue of material fact and that they are entitled to judgment in their favor as a matter of law. SeeVahila v. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164; Dresherv. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Once that burden is met, the onus then shifts to the non-moving parties to provide evidentiary materials in rebuttal. See Trout v. Parker (1991),72 Ohio App.3d 720, 723, 595 N.E.2d 1015; Campco Distributors, Inc. v.Fries (1987), 42 Ohio App.3d 200, 201, 537 N.E.2d 661; Whiteleather v.Yosowitz (1983), 10 Ohio App.3d 272, 275, 461 N.E.2d 1331. With these principles in mind, we turn our attention to the proceedings below.
 II {¶ 13} Because the immunity issue is dispositive of appellants' claims under state law, we proceed out of order to consider appellants' second assignment of error. Appellants argue that the trial court erred in finding the commissioners and the sheriff immune from any liability for Darby's actions under the Political Subdivision Tort Liability Act, codified at R.C. Chapter 2744. We disagree with appellants.
 {¶ 14} In order to resolve immunity questions under these provisions, a three tiered analysis is required. Ryll v. ColumbusFireworks Display Co., Inc., 95 Ohio St.3d 467, 2002-Ohio-2584,769 N.E.2d 372, at ¶ 19; Marshall v. Montgomery Cty. Children Serv.Bd. (2001), 92 Ohio St.3d 348, 352, 750 N.E.2d 549; Carter v. Cleveland
(1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. First, we must determine whether immunity would apply in this case. The provisions of R.C.2744.02(A)(1) state that, except as provided in subsection (B) of the statute, a political subdivision is not liable in damages in a civil action for injury caused by the acts of one of its employees. Obviously, Darby was a county employee and this is a case to recover damages allegedly caused as a result of Darby's actions. Therefore, the statute applies and appellees are potentially immune from liability. Our analysis does not stop at this juncture, however.
 {¶ 15} The second tier of our inquiry is to determine whether any exception to immunity applies in this case. Those exceptions are set forth in R.C. 2744.02(B) and, as both parties agree, the only provision applicable to the facts in this case is as follows:
 {¶ 16} "(5)* * * a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposedupon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued." (Emphasis added.)
 {¶ 17} For this exception to apply, appellants must be able to point to a statute in which the Ohio General Assembly expressly imposed liability on political subdivisions for actions similar to those perpetrated by Darby. In this regard, appellants cite Campbell v. Burton
(2001), 92 Ohio St.3d 336, 750 N.E.2d 539, at paragraphs one and two of the syllabus. In Campbell the Ohio Supreme Court held that a statute that imposes criminal sanctions for the failure to report child abuse constitutes an express imposition of liability for purposes of an exception to immunity under R.C. 2744.02(B). Appellants argue that if the statute's criminal sanctions in Campbell are sufficient for the Ohio Supreme Court to find an express imposition of liability, then we should likewise find an express imposition of similar liability under the aggravated menacing statute. See R.C. 2903.21.[6] We are not persuaded.
 {¶ 18} To begin, it appears that appellants waived this issue for purposes of appeal. In their memorandum contra summary judgment, appellants argued that Darby's actions were "reckless and wanton" and that appellees were excluded from claiming immunity under R.C. 2744.03(A)(6)(b). Appellants did not, however, argue an exception to immunity under R.C.2744.02(B)(5) and the Campbell case. Appellate courts should not consider issues raised for the first time on appeal. See e.g. Gillard v. Green
(Dec. 28, 2001), Washington App. No. 00CA54; State v. Kerns (Mar. 21, 2000), Washington App. No. 99CA30; Farmer v. Meigs Ctr. (Mar. 30, 1998), Meigs App. No. 96CA12. Thus, in light of the fact that appellants did not raise this issue at the trial court level, it is improper for us to consider it for the first time on appeal.
 {¶ 19} Assuming, however, that appellants had properly raised this issue in the trial court, we nevertheless would not be inclined to reverse the trial court's judgment. Admittedly, appellants make a strong argument for finding an exception to liability in this case. The supreme court's analysis in Campbell could be construed, in theory, to support finding political subdivisions liable for an employee's violation of almost any criminal statute. We must agree, however, with appellees thatCampbell is a "unique and narrow" decision and we will not apply its holding any more broadly than the specific facts of that case. Importantly, we note that the statute in Campbell was not a general criminal provision, but rather dealt with a very specific duty conferred on certain professionals to report to children's services agencies their knowledge or suspicion of child abuse. 92 Ohio St.3d at 340-341 citing R.C. 2151.421. A persons failure to make such a report in that instance constitutes a fourth degree misdemeanor. Id. The Ohio Supreme Court noted that the Ohio General Assembly enacted the statute to safeguard children from abuse and that, in many instances, "only the state and its political subdivisions can protect children from abuse." Id. citing Brodie v.Summit Cty. Children Serv. Bd. (1990), 51 Ohio St.3d 112, 119,554 N.E.2d 1301, 1308.
 {¶ 20} By contrast, R.C. 2903.21 imposes a general prohibition and criminal sanction on everyone. No single group of individuals (e.g. teachers or school administrators) are specifically identified for that duty. Moreover, while the state has a general interest to assure that its citizens are safe from crime, we find no particularized interest in rooting out the sort of evil at issue in R.C. 2151.421. In short, we find that R.C. 2151.421 and the Campbell decision that applies it in the context of R.C. 2744.02(B)(5) distinguishable from the issues in this case.
 {¶ 21} Appellant cites no other provision under which the Ohio General Assembly could be said to have imposed political subdivision liability for these kinds of actions, and we have found none in our own research. We therefore conclude, as did the trial court, that appellees are immune from all liability for appellants' state law claims. Consequently, no need exists for us to engage in the third tier of immunity analysis.[7]
 {¶ 22} Accordingly, based upon the reasons stated above, we hereby overrule appellants' second assignment of error.
 III {¶ 23} In their third assignment of error, appellants argue that the Political Subdivision Tort Liability Act's immunity provisions are an unconstitutional infringement on their right to a jury trial. We disagree.
 {¶ 24} Our analysis begins from the fundamental premise that all legislative enactments enjoy a presumption of validity and constitutionality. Adamsky v. Buckeye Local School Dist. (1995),73 Ohio St.3d 360, 361, 653 N.E.2d 212; Sedar v. Knowlton Constr. Co.
(1990), 49 Ohio St.3d 193, 199, 551 N.E.2d 938; Hardy v. VerMeulen
(1987), 32 Ohio St.3d 45, 48, 512 N.E.2d 626. A statute will be held void only when it is shown to violate the Constitution beyond a reasonable doubt. See Fabrey v. McDonald Village Police Dept. (1994),70 Ohio St.3d 351, 352, 639 N.E.2d 31. With these principles in mind, we turn our attention to the statute and the constitutional provision at issue here.
 {¶ 25} Section 5, Article I, Ohio Constitution, guarantees that the right of trial by jury "shall be inviolate." This provision does not guarantee a jury trial in all cases, Belding v. State, ex rel. Heifner
(1929), 121 Ohio St. 393, 396, 169 N.E. 301; Keller v. Stark Elec. Ry.Co. (1921), 102 Ohio St. 114, 116, 30 N.E. 508. Rather, jury trials are guaranteed in those cases in which the right existed at the time the Constitution was adopted. Belding, supra at 393, paragraph one of the syllabus; Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 421,633 N.E.2d 504; Mason v. State ex rel. McCoy (1898), 58 Ohio St. 30, 55,50 N.E. 6. We acknowledge, as appellants argue in their brief, that several justices of the Ohio Supreme Court have opined in dicta that political subdivision immunity under R.C. Chapter 2744 is an unconstitutional infringement on the right to a jury trial. See Butlerv. Jordan (2001), 92 Ohio St.3d 354, 372, 750 N.E.2d 554 (Douglas J., with Sweeney Pfeifer, JJ. concurring in opinion)[8]; Ryll, supra
at ¶ 45 (Douglas with Sweeney, J. Concurring in opinion). However, those views do not yet command a majority on the Ohio Supreme Court. Until they do, we will not strike down that legislation as unconstitutional.[9] Accordingly, based upon the foregoing reasons we overrule appellants' third assignment of error.[10]
 IV {¶ 26} Appellants argue in their first assignment of error that the trial court erred by concluding that Darby was not an employee of the county commissioners or the sheriff for purposes of their claim in respondeat superior. However, because we have determined that appellees are immune from liability on appellants' state law claims, this issue is rendered moot and we disregard this assignment of error. See App.R. 12(A)(1)(c).
 V {¶ 27} In their fourth and final assignment of error, appellants argue that the trial court erred by entering summary judgment against them on their civil rights claim. We agree with appellants.
 {¶ 28} Section 1983, Title 42, U.S. Code provides that every person who, under color of state statute, ordinance, regulation, custom or usage, subjects any citizen to deprivation of rights, privileges or immunities secured by the Constitution, shall be liable to the party injured in an action. Municipalities and other local governments are included among those "persons" to whom Section 1983 applies. Monell v.New York City Department of Social Services (1978), 436 U.S. 658, 690,98 S.Ct. 2018, 56 L.Ed.2d 611. A local government may not, however, be sued under Section 1983 for an injury inflicted solely by its employees or agents. Id. at 694. Instead, when the execution of a government's policy or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury, the government may be responsible under Section 1983. Id.
 {¶ 29} A municipal employer /supervisor of a person who deprived a person of their federal constitutional rights is not vicariously liable for the employee's actions unless the employer implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of its employee. See Brkic v. Cleveland (1997), 124 Ohio App.3d 271, 279,706 N.E.2d 10; Guess v. Wilkinson (1997), 123 Ohio App.3d 430, 435,704 N.E.2d 328; also see Villante v. New York Dept. of Corrections (C.A.2 1986), 786 F.2d 516, 519; Krulik v. New York Bd. of Edn. (C.A.2 1986),781 F.2d 15, 23. Section 1983 liability will attach to employers who are deliberately indifferent to the offending acts perpetrated by their employees. Riley v. Olk-Long (C.A.8 2002), 282 F.3d 592, 596; Andrews v.Fowler (C.A.8 1996), 98 F.3d 1069. 1078.
 {¶ 30} We note that the county commissioners and the sheriff, as the parties moving for summary judgment, had the initial burden of showing that no genuine issues of material fact existed and that they were entitled to judgment in their favor as a matter of law. However, neither the commissioners nor the sheriff submitted evidentiary materials in support of their motion. Instead, they argued that appellant's civil rights claim must fail as a matter of law because he did not expressly plead in his complaint that appellees had an "official policy or practice" that deprived him of his civil rights. The trial court apparently adopted this argument because it held that appellant did not allege "any set of facts that would constitute a cause of action . . . under 1983 CivilRights Act." (Emphasis added.)[11] We disagree with this view.
 {¶ 31} Although appellees cite Monell for the principle that a valid civil rights claim must expressly plead a "policy or practice" which resulted in the violation of civil rights, we do not find that proposition in the Supreme Court's opinion. The Monell case addressed the limited circumstances under which a municipal employer could be held liable for an employee's civil rights violation; it did not address the particularities of pleading that claim. Ohio courts have long held that in order to state a claim under Section 1983, a plaintiff must allege (1) a person acted under the color of state law and committed the conduct in controversy and (2) the conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or the laws of the United States. See 1946 St. Clair Corp. v. Cleveland (1990),49 Ohio St.3d 33, 34, 550 N.E.2d 46; Mankins v. Paxton (2001),142 Ohio App.3d 1, 10, 753 N.E.2d 91; Patrolman "X" v. Toledo (1999),132 Ohio App.3d 374, 398, 725 N.E.2d 291. Appellant, in essence, alleged in his complaint that Darby, while acting under authority of state law, unjustifiably threatened him with a gun and that such action deprived him of his rights. This sufficiently stated a claim under state law.
 {¶ 32} Therefore, in light of our holding that appellant adequately pled a valid civil rights claim, we find that appellees failed to carry their initial burden under Civ.R. 56(C) with respect to that claim. Appellees cited no evidentiary materials on this point in support of their motion for summary judgment. Thus, appellees showed neither the absence of factual issues, nor their entitlement to judgment as a matter of law. Therefore, appellant's fourth assignment of error is well-taken and is hereby sustained.
 {¶ 33} Having sustained appellants' fourth assignment of error, the judgment is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CASE REMANDED FOR FURTHER PROCEEDINGS.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed in part, reversed in part and this cause remanded for further proceedings consistent with this opinion. It is further ordered that appellants and appellees equally divide the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.; Harsha, J. Evans, J.: Concur in Judgment 
Opinion.
[1] Darby claims that appellant came up behind him and pushed him, apparently because he thought that a confrontation was occurring between Darby and Crabtree. According to Darby, appellant later apologized for the misunderstanding. Darby denied that he pulled a gun on appellant and claimed that he did not have a firearm with him that evening.
[2] Crabtree, who is also Darby's neighbor, later recanted his story and said that he saw no gun. Crabtree explained that he was very drunk that night and that he did not mean to cause any trouble.
[3] Appellant Amy Ratcliff included a claim for loss of consortium.
[4] The court did not address appellants' argument that the statute is unconstitutional.
[5] Appellants formally dismissed their claim against Darby on April 1, 2002. This rendered the partial summary judgment a final appealable order. See Denham v. New Carlisle (1999), 86 Ohio St.3d 594,716 N.E.2d 184, at the syllabus.
[6] This statute provides that no person shall knowingly cause another to believe that the offender will cause him serious physical harm. R.C.2903.21(A).
[7] The third tier of analysis involves a determination if any applicable defenses are available to liability under R.C. 2744.03. Ryllv. Columbus Fireworks Display Co., Inc., 95 Ohio St.3d 467,2002-Ohio-2584, 769 N.E.2d 372, at ¶ 26. However, if appellees are immune from liability no need exists to determine if they have any statutory defenses to such liability.
[8] Justices Moyer and Brown concurred only in the judgment and syllabus of that case without joining the opinion. Justice Cook, joined by Justice Stratton, opined that the plurality's "not so subtle hint" that R.C. Chapter 2744 violates Section 5, Article I of the Ohio Constitution, was mere dicta. 92 Ohio St.3d at 375 (Cook, J. Concurring).
[9] We note that in Butler Justice Douglas cites two reasons for his conclusion that the right to a jury trial exists in political subdivision liability cases and should be held inviolate. First, he cites five nineteenth century Ohio Supreme Court cases which "recognized the right to recover against political subdivisions (municipal corporations) of the state for injuries inflicted on private individuals."92 Ohio St.3d at 372. Those cases include Goodloe v. Cincinnati (1831), 4 Ohio 500, Smithv. Cincinnati (1831), 4 Ohio 514; Rhodes v. Cleveland (1840), 10 Ohio 159;McCombs v. Town Council of Akron (1846), 15 Ohio 474; and Town Council ofAkron v. McCombs (1849), 18 Ohio 229. However, even the earliest of these five cases (Goodloe) was decided in 1831, which is twenty-nine years after our first state constitution was adopted, and provides no discussion as to the state of the law either at time of statehood or during the period when the Ohio territory was governed by the Northwest Ordinance. (The right to jury trial in Section 5, Article I, was set out in Section 8, Article VIII of the 1802 Constitution). Thus, we question whether these cases make a compelling argument for that position. The second reason cited for holding the right to a jury trial inviolate in municipal liability cases is that the action is based on negligence and "[n]egligence actions evolved from the common-law action of trespass on the case, and there is no question that the right to trial by jury existed in such actions at the time the Ohio Constitution was adopted." (Emphasis added.) 92 Ohio St.3d at 372. "Evolved" is the key qualifier here. While this sort of action may have evolved from an old common-law action, as did many of the legal proceedings with which we are familiar today, a question arises as to whether that necessarily means that the action existed at the time the 1802 Constitution was adopted. See Masonv. McCoy (1898), 58 Ohio St. 30, 55, 50 N.E. 6.
[10] Because the constitutionality issue has been properly raised and preserved for appeal in this case (as it was not in Butler) we invite the Ohio Supreme Court to review our decision and settle the matter.
[11] We presume this was a typographical error and the trial court meant to say "Section 1983" of the Civil Rights Act rather than the "1983 Civil Rights Act." Section 1983, Title 42, U.S. Code, was first enacted as part of the Civil Rights Act of 1871. See generally Carey v. Piphus
(1978), 435 U.S. 247, 253, 98 S.Ct. 1042, 55 L.Ed.2d 252.