# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3093

_____

Teri L. Dean

*Plaintiff - Appellee*

v.

Edward Bearden, In their Individual Capacity; Elijah L. Mosier, In their Individual Capacity; Todd E. Mustain, In their Individual Capacity; Kevin L. Reed

*Defendant*s

Director Anne L. Precythe, Director of the Missouri Department of Corrections, in her Individual and Official Capacities

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: February 21, 2023
Filed: August 23, 2023

_____

Before SMITH, Chief Judge, STRAS and KOBES, Circuit Judges.

_____

STRAS, Circuit Judge.

The Director of the Missouri Department of Corrections relied on staff to investigate and address sexual-assault allegations against a prison guard. The question for us is whether the Eighth Amendment clearly required her to do more. We conclude that the answer is no, so we reverse the district court's order denying qualified immunity.

I.

When prisoners accused a guard at the Chillicothe Correctional Center of sexual assault, the Missouri Department of Corrections launched an investigation. It led to sanctions against the guard, including an order prohibiting him from having contact with prisoners. He retired just a few weeks later.

Anne Precythe, the Director of the Missouri Department of Corrections, learned about the allegations while the investigation was ongoing. Believing that others had the situation under control, she "didn't [personally] take any action" to address them. As she put it, she "trusted [her] staff to tell [her] if there was something [she] needed to know."

Teri Dean, one of the victims, thought Precythe did not do enough. She sued multiple people,[1] including Precythe, whom she alleges was "deliberate[ly] indifferen[t]" to her safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *see* 42 U.S.C. § 1983.

At summary judgment, Precythe requested qualified immunity. *See* Fed. R. Civ. P. 56(a). The district court concluded that a reasonable jury could find that she knew prisoners faced "a substantial risk of sexual assault." She had, after all, received an email from a lawyer urging her to "follow[] the . . . investigation" and was aware of similar lawsuits against the same guard. Under those circumstances,

---

[1]Dean sued four other staff members, including the guard. None of those claims are before us.

the court explained, "wait[ing] for her staff" to address the problem may have "amount[ed] to deliberate indifference."

## II.

Jurisdiction comes first. A denial of summary judgment is not, on its own, a "final decision[]." 28 U.S.C. § 1291 (granting jurisdiction over "appeals from all final decisions of the district courts"). But the rule is different when qualified immunity is at stake: under the collateral-order doctrine, we have jurisdiction to conduct "limited interlocutory review." *Edwards v. Byrd*, 750 F.3d 728, 731 (8th Cir. 2014); *see Mitchell v. Forsyth*, 472 U.S. 511, 528–30 (1985). It is limited in the sense that we must "accept the district court's factual findings as true and decide whether those facts . . . involve a clearly established violation of federal law." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014). We cannot second-guess a finding that "the pretrial record sets forth a 'genuine' issue of fact for trial." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) (quoting *Johnson v. Jones*, 515 U.S. 304, 320 (1995)).

Dean believes that second-guessing is all Precythe is trying to do. To the extent Precythe wants us to address whether she "had actual knowledge of a substantial risk of harm" yet "fail[ed] to respond," her argument is beyond the scope of our jurisdiction. *See Johnson*, 515 U.S. at 319. We can, however, address one "purely legal issue" she raises: did clearly established Eighth Amendment law require her to personally intervene after learning about the sexual-assault allegations? *Walton*, 752 F.3d at 1116 (quoting *Johnson*, 515 U.S. at 313); *see Plumhoff v. Rickard*, 572 U.S. 765, 773 (2014).

## III.

A few background principles to start. The availability of qualified immunity depends on the answer to two questions. First, did Precythe violate a constitutional right? Second, was the right clearly established? *See Morgan v. Robinson*, 920 F.3d

-3-

521, 523 (8th Cir. 2019) (en banc). In answering these questions, we "accept as true the facts that the district court found were adequately supported, as well as the facts the district court likely assumed." *Molina v. City of St. Louis*, 59 F.4th 334, 338 (8th Cir. 2023) (citation omitted). Our review is de novo. *See Stark v. Lee County*, 993 F.3d 622, 625 (8th Cir. 2021).

### A.

"[D]eliberate indifference is a difficult standard to meet." *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 360 (8th Cir. 2023) (citation omitted). It requires an official to consciously disregard "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A risk of sexual assault is "substantial" if it "occur[s] with sufficient frequency that prisoners are put in reasonable fear for their safety." *Vandevender v. Sass*, 970 F.3d 972, 977 (8th Cir. 2020) (citation omitted). Only if the disregard rises to the level of criminal recklessness is it "punishment." *Farmer*, 511 U.S. at 836–38; *see* U.S. Const. amend. VIII (prohibiting "cruel and unusual punishments").

Proving the Eighth Amendment violation itself, however, is only half the battle. To overcome qualified immunity, Dean must show "that every reasonable official" in Precythe's position "would have understood" that delegating the investigation and response to her staff "violate[d] that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam) (citation omitted); *see Ivey v. Audrain County*, 968 F.3d 845, 849 (8th Cir. 2020) (explaining that the plaintiff "has the burden to show that" the law is clearly established). "[E]xisting precedent," in other words, "must have placed the . . . constitutional question beyond debate." *Taylor*, 575 U.S. at 825 (citation omitted).

### B.

Dean's position is that Precythe's failure to "take any action" after learning about the sexual-assault allegations was deliberately indifferent. *See Kahle v.*

-4-

*Leonard*, 477 F.3d 544, 554 (8th Cir. 2007); *see also Farmer*, 511 U.S. at 834. In her view, Precythe should have dealt with the situation personally, not simply relied on "staff to tell [her] if there was something [she] needed to know."

Even if we assume that Precythe should have done more, neither "controlling authority" nor "a robust 'consensus of cases of persuasive authority'" required it. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (citation omitted). As director, she has wide-ranging responsibilities. Someone in her position would not have known that dealing with sexual-assault allegations by having staff investigate and respond to them was deliberately indifferent under the circumstances. *See Taylor*, 575 U.S. at 825–26; *see also Davis v. Buchanan County*, 11 F.4th 604, 628 (8th Cir. 2021) (explaining that a prison official gets qualified immunity if she "'could reasonably believe' that [her] 'response to the risk was not deliberately indifferent (or reckless) to that risk'" (citation omitted)).

If anything, we have suggested the opposite. Start with *Axelson v. Watson*, 999 F.3d 541 (8th Cir. 2021). After a prisoner was twice attacked by other inmates, a prison committee "decided to return [him] to [the] general population," where "he was attacked again" a few days later. *Id.* at 544. Although he sued the warden for failing to protect him from the third assault, he could not "explain[] why [the warden] should have second-guessed the finding of the . . . [c]ommittee and taken the extraordinary step to intervene or overrule the decision, much less that the failure to do so amounts to deliberate indifference." *Id.* at 546. *Axelson* suggests that a high-ranking official's deference to the judgment of staff does not generally rise to the level of deliberate indifference, even with "kn[owledge] of the danger." *Id.*

The same goes for *Hodges v. Department of Corrections*, 61 F.4th 588 (8th Cir. 2023). There, an inmate had been assaulted over a drug debt. *See id.* at 590–91. Then, when a prison committee failed to separate him from the inmate who attacked him, it happened again. *See id.* at 591. A lawsuit targeting several officials followed. *See id.* Among the defendants were the warden and assistant commissioner of the state's department of corrections, both of whom had gone along

with the committee's recommendation. *See id.* at 593. We concluded that their "defer[ence] to the established [d]epartment policy . . . and the work of the committee" did not amount to deliberate indifference. *Id.* At least in the absence of evidence that the committee itself had acted with deliberate indifference, much less that either official knew it had. *See id.*

The facts here are similar. "[O]versee[ing] investigations into inmate claims" about prison conditions falls to the Office of Professional Standards, a unit of the Missouri Department of Corrections. One of its managers "oversee[s] and supervise[s]" sexual-assault investigations, which gave someone other than Precythe the lead role in handling the complaints. *Axelson* and *Hodges* show that, under this "established policy and process," she had no obligation to do anything more than allow the existing investigation to play out. *Hodges*, 61 F.4th at 593; *see Axelson*, 999 F.3d at 546; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (noting "that high officials require greater protection than those with less complex discretionary responsibilities"); *Johnson v. Johnson*, 385 F.3d 503, 526 (5th Cir. 2004) (explaining that the head of a state's department of corrections "cannot be expected to intervene personally in response to every" complaint she receives). In short, even accepting every finding, Precythe could "not have known for certain" that leaving the investigation to the investigators violated Dean's constitutional rights. *N.S. ex rel. Lee v. Kan. City Bd. of Police Comm'rs*, 35 F.4th 1111, 1114–15 (8th Cir. 2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017)).

## C.

None of the cases Dean discusses clearly establish otherwise. One of them, *Ware v. Jackson County*, is about a county's response to a *completed* sexual-assault investigation. *See* 150 F.3d 873, 883 (8th Cir. 1998). We upheld the jury's finding of deliberate indifference because the county neglected to "order *any* precautionary measures," despite receiving a report "recommend[ing] that" a guard "be terminated." *Id.* at 883–84 (emphasis added).

This case, by contrast, involves a different question: does a prison administrator have to act while the investigation into the alleged misconduct is *ongoing*? Given that prison officials can "reasonably . . . tak[e] the time to investigate [a] threat," *Mosley v. Zachery*, 966 F.3d 1265, 1268 (11th Cir. 2020), it follows that a high-level administrator like Precythe can reasonably wait for an investigation to conclude before taking further action. *See Blair v. Bowersox*, 929 F.3d 981, 988 (8th Cir. 2019) (holding that a deputy warden was not deliberately indifferent when "officials had not yet . . . completed the investigation of the first attack at the time [he] approved [the plaintiff's] return to general population"). In short, a failure to act without knowing all the facts is different from a failure to act once all the facts are known.

*Riley v. Olk-Long* is distinguishable for a similar reason. *See* 282 F.3d 592 (8th Cir. 2002). There, a warden recognized "the possibility that an inmate's safety was jeopardized while in [a guard's] company" but "allowed [him] to resume his prison duties" anyway. *Id.* at 596. Doing nothing in the face of a "known risk" was "not adequate," even though prior investigations into the guard's conduct had "proved inconclusive." *Id.* at 594, 597. Like *Ware*, *Riley* says nothing about what precautionary measures a prison official must take *during* an investigation. *See id.* at 596–97. Nor does it shed light on the duties of a high-level official like Precythe, who has delegated responsibility for handling prisoner complaints to staff who deal with them on a day-to-day basis. *See Hodges*, 61 F.4th at 593; *see also Johnson-El v. Schoemehl*, 878 F.2d 1043, 1050 (8th Cir. 1989).

In the absence of anything more definitive, Dean tries to frame her Eighth Amendment argument at a higher level of generality. In her view, it is enough "that a prison official could be held liable under § 1983 for exhibiting deliberate indifference to a substantial risk that a [prisoner] would be sexually assaulted by a guard." *Kahle*, 477 F.3d at 554; *see Farmer*, 511 U.S. at 842 (stating the general principle that "fail[ing] to act despite . . . knowledge of a substantial risk of serious harm" amounts to deliberate indifference).

The problem, of course, is that "clearly established law must be particularized to the facts of the case." *Hamner v. Burls*, 937 F.3d 1171, 1179 (8th Cir. 2019) (quoting *White v. Pauly*, 500 U.S. 73, 79 (2017) (per curiam)). Dean's "broad right" to protection from sexual assault, in other words, "does not answer" the "specific and particularized" question of whether Precythe violated the Eighth Amendment by waiting for her staff to complete their investigation. *Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020); *see Taylor*, 575 U.S. at 825–26. Her failure to answer that specific question is why Precythe is entitled to qualified immunity.

IV.

We accordingly reverse and remand for the entry of judgment in Precythe's favor and deny Dean's motion to dismiss the appeal.

_____