# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1869

_____

Corey E. Fisherman

*Plaintiff - Appellee*

v.

David Launderville, Individually as well as her/his official capacities

*Defendant - Appellant*

Patrick Burnum; Chris Pawelk, A-W Operations; individually as well as her/his official capacities

*Defendant*s

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: December 13, 2023
Filed: May 6, 2024

_____

Before ERICKSON, MELLOY, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

A prison guard allegedly kneed a restrained inmate multiple times in the face and body. The district court[1] denied qualified immunity on the excessive-force claim that followed. We affirm.

I.

Corey Fisherman is an inmate at Minnesota's maximum-security prison in Oak Park Heights, which houses the state's most dangerous criminals. Fisherman was in the second-most-restrictive unit, Complex 5, because he had threatened staff. Discovery of a shank in his cell led to a transfer to an even more restrictive area, the Administrative Control Unit, Minnesota's version of solitary confinement.

Moving an inmate is a multi-step process. The initial step is a strip search to discover if an inmate has anything dangerous in his possession. Fisherman refused at first, so the guards called in the A-Team, a group specially trained to deal with noncompliant inmates. One of its members, David Launderville, is a defendant in this lawsuit.

The A-Team eventually convinced Fisherman to undergo the search. But after it was over, he objected again when Launderville and another guard told him to kneel and place his hands through the "book pass," a small opening in his cell door about two feet above the floor. Once he finally did so, members of the A-Team placed him in handcuffs.

At that point, it was time to open the cell door. A camera located down the hall recorded what happened next. As the guards slowly opened the door, Fisherman inched forward on his knees. But their movement blocked the camera's line of sight, making it difficult to determine who did what over the next few minutes.

---

[1]The Honorable Jerry W. Blackwell, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable David T. Schultz, United States Magistrate Judge for the District of Minnesota.

-2-

Fisherman claims that Launderville kneed him six times, three times each in the face and body, while another guard kneeled on his legs. The camera captured audio of him cursing at them, including expressing shock and anger at having received a knee to the face. Launderville, by contrast, says he struck a partially unrestrained Fisherman twice in the leg because he was resisting.

The parties generally agree on everything that happened from there. The A-Team moved Fisherman from Complex 5 to the Administrative Control Unit without any further problems. A nurse then checked on him. He pointed to his wrists when asked if he had "any medical concerns," but he declined medical care, including a bandage.

A few months later, Fisherman brought a lawsuit against several prison officials, but only one claim survived summary judgment: the one alleging excessive force by Launderville. *See* 42 U.S.C. § 1983; *see also* U.S. Const. amend. VIII. Launderville's position was that he did not violate Fisherman's constitutional rights. And even if he did, not every reasonable officer would have realized it. *See* Fed. R. Civ. P. 56(a); *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 359 (8th Cir. 2023) (describing the qualified-immunity requirements).

The magistrate judge, however, identified a potential jury issue: did Launderville strike a restrained inmate a total of six times in the face and body or a partially unrestrained one just twice in the leg? The district court adopted the report and recommendation, which means we must now decide whether this fact dispute is material to the outcome of the case. Our review is de novo. *See N.S. ex rel. Lee v. Kan. City Bd. of Police Comm'rs*, 35 F.4th 1111, 1113 (8th Cir. 2022).

II.

We have "limited interlocutory review" in qualified-immunity cases, meaning we lack jurisdiction to decide factual issues, including whether "the pretrial record sets forth a 'genuine' issue of fact for trial." *Dean v. Bearden*, 79 F.4th 986, 988

(8th Cir. 2023) (citation omitted). We can, however, decide "purely legal issue[s]." *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *see Mitchell v. Forsyth*, 472 U.S. 511, 528–30 (1985).

Two arise frequently. First, "accept[ing] the district court's factual findings as true," *Dean*, 79 F.4th at 988 (citation omitted), did the defendant violate a constitutional right? *See Morgan-Tyra v. City of St. Louis*, 89 F.4th 1082, 1085 (8th Cir. 2024). And second, was the right clearly established at the time? *See id.* If either answer is no, then qualified immunity applies.

A.

Fisherman's constitutional claim arises under the Eighth Amendment. His theory is that Launderville "maliciously and sadistically" kneed him in the face and body multiple times with the goal of "caus[ing] harm," not "maintain[ing] or restor[ing] discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam). To distinguish between the two, we consider multiple factors, including the "objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officer[], any efforts by the officer[] to temper the severity of [his] forceful response, and the extent of the inmate's injury." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (citation omitted).

Applying these factors, a reasonable jury could conclude that the repeated blows to his head and body were "malicious[] and sadistic[]." *Hudson*, 503 U.S. at 7. Under Fisherman's version of the facts, and drawing all reasonable inferences in his favor, Launderville kneed him a total of six times while he was kneeling on the floor in a defenseless position, with his legs pinned and his cuffed hands stuck in a book pass. Once Fisherman kneeled and "submitted to cuffing," the "need for force" was gone. *Walker v. Bowersox*, 526 F.3d 1186, 1188 (8th Cir. 2008) (per curiam) (denying qualified immunity); *see Munz v. Michael*, 28 F.3d 795, 800 (8th Cir. 1994)

-4-

(explaining that beating a prisoner "bound hand and foot" violates the Eighth Amendment).

It makes no difference, at least at this stage, that Fisherman had been combative just moments before. *See Smith v. Conway County*, 759 F.3d 853, 860–61 (8th Cir. 2014); *see also Dean v. Jones*, 984 F.3d 295, 310 (4th Cir. 2021) ("[A] correctional officer uses excessive force if he maliciously uses force against an inmate who has been subdued, even if force might have been justified to control the inmate only moments before."). Nor does it matter that his injuries were minor and he refused a bandage. Although the absence of serious injury is a relevant factor, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38; *see Hudson*, 503 U.S. 1 at 9 (explaining that an Eighth Amendment excessive-force claim does not solely depend on "whether or not significant injury is evident"). It is enough at this point that he claims to have suffered "anguish, misery, [and] pain." *Munz*, 28 F.3d at 800 (citation omitted).

## B.

"Proving the Eighth Amendment violation itself, however, is only half the battle." *Dean*, 79 F.4th at 989. To overcome qualified immunity, Fisherman must show "that every reasonable official" in Launderville's position "would have understood" that kneeing a restrained inmate several times in the face and body "violate[d] that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (per curiam) (citation omitted); *see Ivey v. Audrain County*, 968 F.3d 845, 849 (8th Cir. 2020) (explaining that the plaintiff "has the burden to show that" the law is clearly established). "[E]xisting precedent," in other words, "must have placed the . . . constitutional question beyond debate." *Taylor*, 575 U.S. at 825 (citation omitted).

The law has been settled for at least three decades that repeatedly striking a fully restrained inmate violates the Eighth Amendment. As early as 1994, we

expressed "confiden[ce] that prison officials reasonably should have understood . . . that they were violating a prisoner's Eighth Amendment rights if they beat him while he was bound hand and foot in a padded cell, even though the prisoner may have sustained no serious injury." *Munz*, 28 F.3d at 800.

Our cases since then have not wavered from this rule. *See, e.g.*, *Walker*, 526 F.3d at 1188; *Proctor v. Harmon*, 257 F.3d 867, 868 (8th Cir. 2001) (per curiam); *Est. of Davis v. Delo*, 115 F.3d 1388, 1394–95 (8th Cir. 1997); *see also Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (explaining that the "law [is] clearly established that correctional officers do not have a blank check to use force whenever a prisoner is being difficult"). Nor have most other courts. *See, e.g.*, *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) ("[I]t is clearly established law that beating a handcuffed convict violates the Eighth Amendment."); *Jacobs v. Cumberland County*, 8 F.4th 187, 197 (3d Cir. 2021) (collecting cases) ("[T]he specific conduct here—striking a physically restrained and nonthreatening inmate— was clearly unlawful under the precedent of this Court *and our sister circuits*." (emphasis added)); *Jones*, 984 F.3d at 310 ("[A] correctional officer uses excessive force if he maliciously uses force against an inmate who has been subdued."); *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) ("[I]t was well-established . . . that officers may not use gratuitous force against a prisoner who has already been subdued." (citation omitted)); *Skritch v. Thornton*, 280 F.3d 1295, 1303–04 (11th Cir. 2002) ("Our precedent clearly establish[es] that government officials may not use gratuitous force against a prisoner who has already been subdued.").

Launderville's position is that his conduct falls outside the heartland of these cases because they involved greater force. But the amount of force is only one part of the equation, with how "gratuitous[]" it is being another. *Wilkins*, 559 U.S. at 38. And here, if we are to believe Fisherman's account, kneeing him in the face and body six times while he was immobile and in a contorted position clearly qualifies as gratuitous, *see id.*, even if we have seen worse. *See Proctor*, 257 F.3d at 868 (denying qualified immunity when an officer "jumped on" the handcuffed inmate, "body-slammed him to the floor twice, stomped on his head and back, and kicked

and punched him repeatedly" while other officers "beat him with a flashlight and their fists"); *Delo*, 115 F.3d at 1394 (denying qualified immunity when the officer "struck [the inmate] in the head and face 20 to 25 times").

## III.

We accordingly affirm the district court's order denying qualified immunity.

_____