GRUENDER, Circuit Judge.
 

 Patric Patterson brought this
 
 pro se
 
 civil rights action seeking monetary damages for injuries sustained when he was attacked by a fellow inmate at an Arkansas prison. He now appeals the district court's
 
 [1]
 
 denial of appointed counsel and adverse grant of summary judgment on his failure-to-protect claims against various corrections officials. For the reasons that follow, we affirm.
 

 I.
 

 On March 15, 2014, Patterson was housed in Barracks 13, an "open barracks" at the Arkansas Department of Correction's ("ADC") Varner Unit. That afternoon, Patterson and fellow inmate Michael Black had an altercation. Patterson subdued Black but released him after Black said, "Ok, it's over." Taking Black at his word and not wanting to be seen as a "snitch," Patterson did not to report the incident to prison officials. Unfortunately, his trust proved unfounded. Just after 3 a.m. the next morning, Black went to Patterson's bunk while he was sleeping and struck him repeatedly with a boot in a laundry bag. Over the course of this minute-long beating, Black also intermittently kicked Patterson. Black then returned several minutes later to deliver a few additional blows to Patterson, who had fallen to the ground and was nonresponsive. Patterson eventually received medical attention, but only after he managed to report the incident nearly ten minutes after the beating began. As a result of his injuries, Patterson underwent multiple surgeries and now has a glass eye.
 

 Richard Mazzanti was the duty officer assigned to Barracks 13 and 14 on the night of the attack. The officer at this post is generally positioned in a control booth located between the ends of the two 54-bed barracks, but the officer is also responsible for monitoring a hallway that runs along one side of Barracks 13 and 14. The hallway's glass walls allow the officer to see inside the barracks, including areas not
 visible from the control booth. That night, Mazzanti performed a visual check of the barracks from either the control booth or the hallway every thirty minutes, as required by ADC policy. A subsequent internal investigation confirmed that his post and all others were properly staffed during the relevant timeframe.
 

 In March 2015, Patterson filed a verified,
 
 pro se
 
 complaint pursuant to
 
 42 U.S.C. § 1983
 
 against the Director of the ADC, Mazzanti, and six other officials at the Varner Unit. The complaint claims that Black was able to assault Patterson "as a result of the fact that there was no security in the barracks." In particular, the complaint highlights an ADC policy prohibiting officers from entering the barracks alone. The complaint also alleges that Mazzanti "was not present in the booth or in the vicinity of the barracks" at the time of the attack, although Patterson later acknowledged in deposition testimony that he had no knowledge of Mazzanti's "comings and goings."
 

 The complaint asserts that the policy of assigning one officer to monitor two barracks was "inadequate" and that the officers' conduct, taken together, constituted "a crystal clear case of 'failure to protect.' " The complaint then identifies three "causes" of the incident:
 
 [2]
 
 (1) Mazzanti was "inattentive to his duties" despite "[k]nowing the propensity for violence in an unattended barracks"; (2) supervisory officials "knew that one ... security officer was not enough security for two ... barracks, housing 54 inmates each"; and (3) that each of the "defendants know that there are not enough staff members (security) to adequately maintain security, and provide direct supervision for the number of barracks there are and the number of inmates housed in those barracks."
 

 After commencing the action, Patterson represented himself without issue for several months. During this time period, he filed a successful application to proceed
 
 in forma pauperis
 
 , gathered evidence to support his claims through interrogatories and affidavits, identified and substituted defendant-officials for John Doe defendants, and exhibited a good command of relevant law. But in response to the defendants' first motion for summary judgment, Patterson moved for appointed counsel. The magistrate judge denied this motion, finding that the "claims are not legally or factually complex" and that Patterson had proven a capable advocate. The district court also denied the motion for summary judgment as to all but two of the defendants, allowing the case to proceed.
 

 Several months later, the remaining defendants moved to extend their deadline for dispositive motions by twenty days "due to the complexity of the claim involved, the amount of damages sought by the Plaintiff and the number of defendants involved." After the magistrate judge granted the extension on the basis of "good cause shown," Patterson filed a second motion for appointed counsel, which highlighted the court's apparently inconsistent findings as to the complexity of the case. The magistrate judge denied this second request, concluding that Patterson failed to show cause for reconsidering the denial of his original motion.
 

 The defendants again moved for summary judgment, arguing that they were entitled to qualified immunity as to the failure-to-protect claims. Along with his response in opposition, Patterson attached a
 variety of documentary evidence. As relevant here, Patterson submitted Mazzanti's interrogatory answer, which stated that he had "performed visual checks approximately every 30 minutes from the hallway and my control booth" and further confirmed that he was in one of those two locations at the time of the assault. But an affidavit from a fellow inmate claimed that officers regularly skipped security checks and noted that they "can't even see the whole barracks from those little windows [in the security booth]." Similarly, in his own affidavit, Patterson attested that "[o]fficers never came in the [barracks] unless it was count time or they had their own agenda"; that officers regularly logged security inspections that were not actually performed; and that "[t]he rack/bed where [he] was assaulted 23 times with a weapon and stomped on 6 times ... cannot be seen from the booth." The end result, Patterson suggested, was that he had witnessed "many violent attacks, robberies, gambling, and homosexual activities" during his time at the Varner Unit.
 

 The district court referred the matter to the magistrate judge, who issued a report and recommendation ("R&R") concluding that the defendant-officials were entitled to summary judgment. The R&R bifurcated its analysis of Patterson's failure-to-protect claim, first considering whether the defendants failed to protect Patterson against any
 
 specific
 
 threat before addressing whether they were deliberately indifferent to a
 
 general
 
 threat to prisoners in Barracks 13 and 14. Given that Patterson himself did not anticipate Black's attack, the magistrate judge found that the failure-to-protect claim concerning this specific threat failed. As to the general threat, the R&R began by addressing Patterson's allegations against Mazzanti. The magistrate judge concluded that, even if Mazzanti was completely inattentive to his duties on the night of the attack, his conduct was at worst grossly negligent, which is not enough to constitute a violation of the Eighth Amendment.
 
 See
 

 Tucker v. Evans
 
 ,
 
 276 F.3d 999
 
 , 1001-02 (8th Cir. 2002). The R&R then rejected Patterson's suggestion that Varner's open-barracks policy violates the "constitutional minimum conditions" we discussed in
 
 Smith v. Arkansas Department of Correction
 
 ,
 
 103 F.3d 637
 
 , 648 (8th Cir. 1996), a case which applied only to the policies and practices at Arkansas's Cummins Unit at a time when that facility was under specific remedial court orders,
 
 see
 

 Tucker
 
 ,
 
 276 F.3d at 1002-03
 
 . Moreover, the R&R noted, Patterson failed to adduce any evidence that the defendants were subjectively indifferent to any risks. Thus, the magistrate judge concluded that Patterson's failure-to-protect claims failed.
 

 The district court adopted the R&R in full and granted summary judgment on the remaining claims. Patterson now appeals, arguing that the district court
 
 [3]
 
 abused its discretion in denying his motions for appointed counsel and erred in granting the officers summary judgment. We address these challenges in turn.
 

 II.
 

 Patterson's primary claim on appeal is that the district court improperly refused his request for appointed counsel. As a result, Patterson argues, he was unable to marshal the facts to effectively support his claim. "We review the denial of a motion for appointment of counsel for an abuse of discretion, according the district court a good deal of discretion to determine whether representation is warranted
 given the nature of the case and the litigants."
 
 Ward v. Smith
 
 ,
 
 721 F.3d 940
 
 , 942 (8th Cir. 2013) (per curiam) (internal quotation marks omitted).
 

 As Patterson himself acknowledged,
 
 pro se
 
 litigants have neither a constitutional nor a statutory right to appointed counsel in civil cases.
 
 See
 

 Phillips v. Jasper Cty. Jail
 
 ,
 
 437 F.3d 791
 
 , 794 (8th Cir. 2006). Instead, district courts may appoint counsel in such cases if convinced that an indigent plaintiff has stated a non-frivolous claim,
 
 see
 

 28 U.S.C. § 1915
 
 (e), and where "the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel,"
 
 see
 

 Johnson v. Williams
 
 ,
 
 788 F.2d 1319
 
 , 1322 (8th Cir. 1986). "The relevant criteria for determining whether counsel should be appointed include the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments."
 
 Phillips
 
 ,
 
 437 F.3d at 794
 
 . Here, the district court considered these factors in rejecting Patterson's request for counsel, specifically finding that the facts and legal issues were not sufficiently complex to justify the appointment of counsel and that Patterson had proven capable of representing himself.
 

 On appeal, Patterson makes four arguments to show that the district court abused its discretion in making this determination. Three plainly fail. First, Patterson claims that, as an inmate, he was unable to interview witnesses and secure relevant information. Second, he suggests that his inartfully worded interrogatories allowed defendants to give evasive answers. And third, although his appointed appellate counsel concedes that Patterson did "a fair job of researching the law," she argues that "this is complex litigation" requiring the assistance of counsel because the case involves administrative regulations and government funding issues.
 

 None of these grounds are sufficient to show an abuse of discretion. As an initial matter, there is no evidence that the district court failed to consider these factors in concluding that appointed counsel was unnecessary. Indeed, Patterson presented similar arguments in his motions for appointed counsel. Moreover, given that most indigent prisoners will face similar challenges in bringing § 1983 claims, a finding that the district court abused its discretion on these bases would be tantamount to recognizing a right to appointed counsel for indigent prisoners in such cases. This we refuse to do.
 

 Patterson's final point, which served as the focus of his second motion for appointed counsel, seemingly presents a closer question. Patterson claims that the district court abused its discretion by granting the defendants' motion to extend the deadline for dispositive motions- which was based, in part, on the complexity of the case-while denying his first request for counsel because the case was not sufficiently complex. On closer inspection, however, this argument fails. As an initial matter, Patterson has not shown an actual inconsistency in these two rulings. While motions to extend deadlines and motions for appointed counsel both call for the exercise of a district court's discretion, the inquiries underlying these requests are far different.
 
 Compare
 
 Fed. R. Civ. P. 6(b)(1) (motion for extension),
 
 with
 

 28 U.S.C. § 1915
 
 (e) (motion for appointed counsel). Moreover, in granting the defendants' motion for an extension, the district court did not necessarily signal agreement that the case was complex, given that the defendants provided three independent reasons for their requested extension, and the court did not specify which served as its basis for finding good cause. Thus, the
 district court could have granted the extension without necessarily concluding that the factual or legal issues were complex. However, even assuming that Patterson has identified an inconsistency and that the district court found the case to be complex, it still retained the discretion to deny his motion for appointed counsel. Complexity is only one factor for a court to consider in evaluating a motion for appointed counsel, and it is not dispositive of that inquiry.
 
 See
 

 Johnson
 
 ,
 
 788 F.2d at 1322-23
 
 . Significantly, Patterson proved adept at representing himself both before the district court and this court. Thus, while the district court had the discretion to appoint Patterson counsel on this record, it did not abuse this discretion in declining to do so.
 

 III.
 

 Next, Patterson challenges the grant of summary judgment on his failure-to-protect claims. He argues that the record contains evidence that Mazzanti did not make security rounds on the night of the attack and that he was otherwise inattentive to his duties. Patterson also contends that the district court erred in concluding that the officers were not deliberately indifferent to a general risk of inmate attacks in Barracks 13 and 14 because they allegedly knew that the barracks were understaffed, that a single officer could not adequately secure both barracks, and that the security policies were otherwise insufficient to safeguard inmates. "We review
 
 de novo
 
 the district court's grant of summary judgment based on qualified immunity."
 
 LaCross v. City of Duluth
 
 ,
 
 713 F.3d 1155
 
 , 1157 (8th Cir. 2013). "When reviewing a motion for summary judgment the question before this court is whether the record, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 
 Tucker
 
 ,
 
 276 F.3d at
 
 1001 ;
 
 see also
 
 Fed. R. Civ. P. 56(a).
 

 Qualified immunity shields state officials from both civil liability and the burdens of litigation unless their conduct violates a clearly established right of which a reasonable person would have known.
 
 Young v. Selk
 
 ,
 
 508 F.3d 868
 
 , 871 (8th Cir. 2007). Thus, to overcome this defense, Patterson must show that: "(1) the facts, viewed in the light most favorable to [him], demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation."
 
 See
 

 Saylor v. Nebraska
 
 ,
 
 812 F.3d 637
 
 , 643 (8th Cir. 2016). Here, Patterson asserts that defendants violated his Eighth Amendment rights by failing to protect him from Black.
 

 The Eighth Amendment "requires prison officials to 'take reasonable measures to guarantee' inmate safety by protecting them from attacks by other prisoners."
 
 Young
 
 ,
 
 508 F.3d at 872
 
 (quoting
 
 Farmer v. Brennan
 
 ,
 
 511 U.S. 825
 
 , 832,
 
 114 S.Ct. 1970
 
 ,
 
 128 L.Ed.2d 811
 
 (1994) ). Yet a constitutional claim does not lie every time one inmate attacks another.
 

 Id.
 

 Rather, prison officials violate the Eighth Amendment "only when they exhibit a 'deliberate or callous indifference' to an inmate's safety."
 
 Tucker
 
 ,
 
 276 F.3d at 1001
 
 . For this reason, to prevail on a failure-to-protect claim like Patterson's, an inmate must make two showings: "[1] an objective component, [that] there was a substantial risk of harm to the inmate, and [2] a subjective component, [that] the prison official was deliberately indifferent to that risk."
 
 See
 
 id.
 

 First, insofar as Patterson alleges that the defendants failed to protect him from a specific threat posed by Black, his own inability to anticipate the surprise attack and his decision not to report his
 altercation with Black the previous afternoon defeat liability.
 
 See
 

 id.
 

 at 1001-02
 
 (finding qualified immunity appropriate where a failure-to-protect claim arises from a "surprise attack" by another inmate). Patterson's specific claims against Mazzanti also fail. As an initial matter, we note that Patterson stated in his deposition testimony that he was unaware of Mazzanti's "comings and goings." This admission undercuts the allegation in his complaint that Mazzanti was either absent or inattentive during the attack. Nevertheless, even ignoring this evidence, Mazzanti's conduct represents-at most-gross negligence, which falls short of deliberate indifference as a matter of law.
 
 See
 
 id.
 

 (concluding that similar conduct "certainly points to negligence, and quite possibly even gross negligence, but that is insufficient to prove a violation of [an inmate's] constitutional rights."). Lastly, to the extent Patterson suggests that the Varner Unit's policies relating to open barracks, staffing levels, and security are
 
 per se
 
 unconstitutional under
 
 Smith
 
 , the magistrate judge correctly read
 
 Tucker
 
 as confining
 
 Smith
 
 's holding to "a particular open barracks" during a particular period of time.
 
 See
 

 id.
 

 at 1002-03
 
 (explaining that
 
 Smith
 
 was limited to a "specific prison unit" that was under a remedial court order at the time in question).
 

 Patterson's remaining claim is that the defendants failed to protect him from a general risk of harm. He alleges that the barracks are understaffed and that prison officials routinely fail to conduct security checks. Assuming that Patterson has satisfied the
 
 objective
 
 component of his failure-to-protect claim, however, the record is devoid of evidence suggesting that any of the defendants were
 
 subjectively
 
 aware of, or deliberately indifferent to, a substantial risk of harm to inmate safety.
 
 See
 

 id.
 

 at 1001-03
 
 (reversing the denial of qualified immunity related to an inmate attack where one guard was responsible for monitoring two open barracks from a control booth because there was no evidence of subjective indifference).
 

 Patterson claimed in his affidavit that he witnessed "many violent attacks, robberies, gambling, and homosexual activities" during his time at the Varner Unit. But Patterson expressly stated that this misconduct "never got reported to ADC officials." It is true, as the dissenting opinion emphasizes, that an obvious risk of harm may justify an inference that prison officials subjectively disregarded that risk.
 
 See
 

 Farmer
 
 ,
 
 511 U.S. at 842
 
 ,
 
 114 S.Ct. 1970
 
 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ....");
 
 see also
 

 Lenz v. Wade
 
 ,
 
 490 F.3d 991
 
 , 995 (8th Cir. 2007). But to make such an inference, there must be some evidence showing that the defendants were exposed to the underlying facts revealing that risk. As the Supreme Court explained,
 

 [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,
 
 and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk
 
 and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.
 

 Farmer
 
 ,
 
 511 U.S. at 842
 
 ,
 
 114 S.Ct. 1970
 
 (emphasis added) (internal quotation marks omitted).
 

 In suggesting that the risks to inmate safety were obvious, the dissenting opinion overlooks Patterson's own affidavit admitting that misconduct was not reported to
 the ADC.
 
 [4]
 
 Inferring subjective awareness here would be akin to adopting an objective test for deliberate indifference-an approach the Supreme Court explicitly rejected.
 
 See
 

 Farmer
 
 ,
 
 511 U.S. at 837
 
 ,
 
 114 S.Ct. 1970
 
 . Indeed, a comparison of the record in this case with that in
 
 Krein v. Norris
 
 is instructive.
 
 See
 

 309 F.3d 487
 
 , 491-92 (8th Cir. 2002) (affirming a district court's denial of qualified immunity where evidence showed that the "defendants objectively and subjectively knew of, and deliberately disregarded, an excessive risk of harm to inmate health and safety"). In
 
 Krein
 
 , the record showed that:
 

 defendants' failure to abide by staffing requirements created an environment which posed a risk of harm to all inmates housed in the barracks area; the NCU had one guard for three barracks housing 150 inmates; defendants were or should have been aware of an inadequate staffing problem as early as August 1997 and yet they had made no staffing changes as of January 1998, when the attack occurred; the level of violence in Barracks # 1 was five times that of any other NCU barracks and yet staffing adjustments were not made to address the disparity; the number of isolation cells was inadequate; and ADC failed to keep track of the number and locations of assaults [in] the NCU.
 

 Id.
 

 at 489-90, 492
 
 . The record here lacks such evidence justifying an inference that the defendants subjectively disregarded a substantial risk of harm.
 

 Thus, we conclude that Patterson failed to raise a genuine issue of material fact as to whether the defendants were deliberately indifferent to a general risk of harm to inmates in Barracks 13 and 14. The district court did not err in granting the defendants qualified immunity.
 

 IV.
 

 Accordingly, we affirm the denial of Patterson's request for appointed counsel and the grant of summary judgment to the defendant-officials.
 

 The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, adopting the report and recommendation of the Honorable J. Thomas Ray, Chief Magistrate Judge, United States District Court for the Eastern District of Arkansas.
 

 In his complaint, Patterson identifies a fourth "cause"-that supervisory officials failed to adequately train Mazzanti. But given his failure to mention this allegation on appeal, we deem the failure-to-train claim abandoned.
 
 See
 

 Burke v. N.D. Dep't of Corr. & Rehab.
 
 ,
 
 294 F.3d 1043
 
 , 1044 (8th Cir. 2002) (per curiam).
 

 While aware that the magistrate judge made several of the rulings at issue on appeal, for ease of reference, we adopt the parties' approach of referring to these as rulings of the district court unless otherwise noted.
 

 The prison's policy prohibiting an officer from entering a barracks without another officer present tells us little about prison officials' awareness of a substantial risk of harm to inmates. The unique risks faced by prison officers could justify such measures even where inmates faced no substantial risk of harm whatsoever.