# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 21-3891

———————————————

David Laurence Hodges,

*Plaintiff - Appellant,*

v.

State of Minnesota Department of Corrections; Ashlee Berts; Derek Gunderson;
Stacy Olson; Jeffrey T. Titus; Collin Gau; Gene Olson,

*Defendants - Appellees,*

————————

Appeal from United States District Court
for the District of Minnesota

————————

Submitted: October 18, 2022
Filed: March 3, 2023

————————

Before COLLOTON, KELLY, and KOBES, Circuit Judges.

————————

COLLOTON, Circuit Judge.

Minnesota prisoner David Hodges sued several officials of the Minnesota
Department of Corrections, alleging that they violated his constitutional rights by

failing to protect him from an attack by a fellow inmate. The district court[*] granted summary judgment for the officials, and we affirm.

I.

Hodges was incarcerated at the Rush City, Minnesota correctional facility as of September 2018. At that time, Hodges engaged in an altercation with a fellow inmate named Osgood. A cellmate of Hodges owed money to Osgood for drugs, and Osgood attempted to collect from Hodges. Osgood was a member of one prison gang; Hodges and his cellmate were members of another. Hodges informed Osgood that he had nothing to do with the cellmate's debt, and refused to pay.

On September 18, Osgood told Hodges that he would be waiting for Hodges when he returned from a prison work detail. Shortly after Hodges arrived at his cell, Osgood entered, shut the door, and attacked Hodges with a shank. Hodges defended himself by throwing hot water onto Osgood. The fight lasted a couple of minutes, and both men suffered burns. Osgood apparently sustained significant injuries and remained in his cell for a few days thereafter.

Hodges believed that Osgood would seek revenge and asked his relatives to contact the Department of Corrections about his concern for safety. His relatives urged the Department to take precautions, including by transferring Hodges to another facility.

Prison officials interviewed Hodges a week after the incident. Hodges stressed that prison officials needed to keep him away from Osgood "because things in 3

---

[*]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Katherine Menendez, then a United States Magistrate Judge for the District of Minnesota.

North are not done yet," and "[i]t's gonna get really ugly in there and I just want out of here." Hodges admitted to taking the shank from Osgood during the fight, but claimed that he disposed of it. Prison officials were unable to locate the weapon. Hodges received a disciplinary sanction of forty days in segregation for his role in the fight.

In the course of their investigation, prison officials reviewed video evidence and prepared an incident report. When investigators spoke with Osgood, he stated that as far as he was concerned, "the issue was dead."

The Department of Corrections has a policy on "offender incompatibility" to review issues of incompatibility between offenders and to enhance security and safety of offenders and staff. The Rush City prison maintains an "incompatibility committee" to make decisions about whether certain inmates are incompatible and should be separated. There are eight or nine members of the committee, but the only members sued in this case were appellees Berts, Gunderson, and Gene Olson. Berts and Olson were voting members of the committee; Gunderson is an investigator who provided relevant information to the decisionmakers. The committee meets weekly, and considers six or seven matters in a typical week.

Under Department policy, when the committee finds compelling evidence that continued placement of two inmates in the same location would result in a risk of serious bodily injury to one or both of the inmates, the committee makes a recommendation that the two are incompatible. Appellee Berts, the chair of the committee, paraphrased the policy to mean that the committee examines whether there is a very good reason to believe that harm would come to one of the offenders. If the committee recommends separation, then a manager in the Department makes a final decision about whether to transfer an inmate.

The incompatibility committee considers the totality of circumstances in making its decisions. The sources of information include incident reports, complaints and requests from inmates, information obtained from disciplinary investigations, previous injuries to an inmate, weapons or gang affiliations, information from an offender's family or friends, and documentation cited in a complaint or pre-sentence investigation.

The Rush City incompatibility committee met on September 26, 2018, and discussed Hodges and Osgood. According to committee member Gene Olson, the committee reviewed the incident report regarding the altercation on September 18, and determined not to recommend that Hodges and Osgood be separated. Olson said the committee relied on the fact that the altercation was the first incident between the two inmates, and that one of the two believed that "the issue was dead." Committee member Berts did not recall the specific discussion, but testified that the committee would have reviewed the incident reports concerning the altercation. Two others who were likely present at the meeting—committee member Gunderson and a staff assistant—did not recall the discussion. The committee prepared no written record of its deliberations, but a note was placed in the Department's computer system stating that "no action" was taken to declare the inmates incompatible.

Hodges continued to send written communications to prison officials stating that he feared an attack from Osgood or others. His relatives contacted the Department with questions about the incident and to request that Hodges be transferred to another facility. The family members reiterated that Hodges did not feel safe and had received threats from other offenders.

Hodges returned from segregation to the general prison population on November 3, 2018. On that same date, Osgood and another inmate attacked Hodges by throwing a heated liquid in his face and striking him in the head and face. Hodges sustained a fractured nasal bone and serious burns to his face and chest.

Following the second altercation, the incompatibility committee conducted another review and recommended that Hodges and Osgood should be separated. The Department ultimately transferred Hodges to another facility in Stillwater.

Hodges then sued several officials and the Department under 42 U.S.C. § 1983. As relevant here, he alleged that the officials violated his rights under the Eighth Amendment to be free from "cruel and unusual punishment" when the officials failed to protect him from an attack by Osgood. The district court granted summary judgment for the officials on the ground that Hodges presented insufficient evidence to show that any official was deliberately indifferent to a substantial risk of serious harm to Hodges. The court dismissed the claim against the Department without separate discussion.

Hodges appeals the dismissal of his Eighth Amendment claims. We review the grant of summary judgment *de novo*, construing the evidence in the light most favorable to Hodges. Summary judgment is appropriate when the record presents no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## II.

The Eighth Amendment requires officials to "provide humane conditions of confinement" by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To prove an unconstitutional failure to protect from harm, Hodges must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) a defendant was deliberately indifferent to the substantial risk of serious harm. *Id*. at 834. The dispute here concerns the subjective deliberate indifference requirement under the second element.

Deliberate indifference under the Eighth Amendment is the equivalent of criminal recklessness: the defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. An official is deliberately indifferent only if he actually knows of the substantial risk and fails to respond reasonably to it. *Id*. at 844-45. This standard incorporates "due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id*. at 845 (internal quotation omitted).

Hodges argues that prison officials were deliberately indifferent to a substantial risk that Osgood would attack him again after the first altercation. He cites evidence that the first attack involved a weapon, injuries, and inmates who were affiliated with gangs. He emphasizes that he and his relatives repeatedly communicated fears about safety and requested that the prison transfer him to another facility. Hodges asserts that neither members of the incompatibility committee nor other officials who knew about his concerns meaningfully considered the risks to his safety before declining to separate the inmates. Hodges suggests that the lack of documentation about the committee's meeting and the inability of some attendees to remember the meeting demonstrates that the officials were deliberately indifferent to a risk of harm.

We agree with the district court that the evidence is insufficient to show that any of the defendant officials subjectively concluded that Hodges faced a substantial risk of serious harm and then failed to respond reasonably to it. The unrebutted evidence is that the two voting officials on the incompatibility committee considered incident reports and other relevant information, but decided that the situation did not rise to the level of incompatibility—that is, they concluded that the evidence did not indicate a risk of serious bodily injury to an offender. This means that the officials did not draw the subjective inference that there existed a substantial risk of serious harm to Hodges. The officials predicted incorrectly, but they were not deliberately indifferent for purposes of the Eighth Amendment.

-6-

Hodges makes much of the fact that three attendees at the meeting of the incompatibility committee could not recall the substance of the discussion that occurred two years earlier. But the Eighth Amendment does not require documentation of prison decisions or impose liability for lack of recollection. Summary judgment is appropriate if the inmate fails to make a showing sufficient to establish that the officials were deliberately indifferent. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Although the officials are not required to negate the inmate's claim, the officials here presented an account of one committee member who summarized the meeting, and another who testified to the committee's customary practices. Hodges did not come forward with evidence showing that prison officials subjectively believed that he was at substantial risk of serious harm and then ignored the concern.

This case is not like *Young v. Selk*, 508 F.3d 868 (8th Cir. 2007), where an inmate showed that a prison sergeant ignored an urgent request for protection and told the inmate to talk to someone else. *Id*. at 871. Nor is it comparable to *Nelson v. Shuffman*, 603 F.3d 439 (8th Cir. 2010), where a detainee presented evidence that officials at a treatment center indifferently placed him in a room with a resident who they knew had exhibited a history of sexual assault and whose conduct at the center was "violent, aggressive, assaultive, and out of control." *Id*. at 447. The officials here convened a meeting to discuss a one-time altercation between inmates and to consider whether the inmates should be separated. Hodges presented insufficient evidence to dispute that the committee members made a subjective judgment under the circumstances that Hodges was not at substantial risk of serious bodily injury.

As to the officials who were not voting members of the incompatibility committee, Hodges has not made a sufficient showing that any of them was deliberately indifferent. The non-voting member of the committee, investigator Gunderson, provided relevant information to the decisionmakers. Hodges has not made a showing that Gunderson was deliberately indifferent in performing his

assigned function. Hodges expressed concern to caseworker Stacy Olson on September 28, 2018, about continued contact with Osgood. Olson forwarded that information to her watch commander, and determined that Hodges' request for separation from Osgood had been reviewed by the incompatibility committee two days earlier. She was not deliberately indifferent by deferring to the established process within the prison for determining whether inmates are incompatible.

Appellee Titus was the warden at the Rush City facility; appellee Gau was the assistant commissioner of the facilities division in the Department of Corrections. Both received copies of communications showing that a relative of Hodges had contacted the Department in September 2018 to express concern about Hodges' safety. Both officials deferred to the established Department policy on incompatibility and the work of the committee within the prison. Hodges argues that Titus improperly relied on space constraints when he averred that the Department "cannot move every offender who has an altercation or where there may be gang affiliation." But the Eighth Amendment does not require a transfer of all inmates in those categories; it imposes an obligation to act when prison officials know that there is a substantial risk of serious harm to an inmate. Given the absence of a showing that the incompatibility committee was deliberately indifferent, and that either supervisory official knew of such indifference, Hodges has not made a sufficient showing that Titus or Gau was deliberately indifferent by deferring to the established policy and process. *See Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021). Hodges makes no argument about why the Department of Corrections, an agency of the State, could be liable under the Eighth Amendment, so any claim against the Department itself is waived.

\* \* \*

The judgment of the district court is affirmed.

KELLY, Circuit Judge, concurring.

I concur, but write separately because I disagree with the court's discussion of the subjective component of the deliberate indifference requirement of Hodges' Eighth Amendment claim. The court concludes that the voting members of the incompatibility committee "did not draw the subjective inference that there existed a substantial risk of serious harm to Hodges" because they determined the conflict between Hodges and Osgood "did not rise to the level of incompatibility." But the committee's incompatibility determination, alone, does not shed light on the subjective belief of the committee members. In other words, it is not a foregone conclusion that prison officials, by simply making a not-incompatible finding like the committee did here, are free from liability under the Eighth Amendment. And while the Eighth Amendment may not require recordkeeping by prison officials or impose liability for lack of recollection, the absence of documentation regarding prison decisions or prison officials' inability to remember events central to their decision-making process may be relevant to determining the knowledge and subjective understanding of these officials. See Farmer, 511 U.S. at 842 ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ."). Nevertheless, I concur in the court's judgment because, on the record before us, Hodges has not shown facts to allow a jury to reasonably conclude that prison officials subjectively believed he faced a substantial risk of serious harm from Osgood.

_____