# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2002

_____

Justin Johnson

*Plaintiff - Appellant*

v.

Jacob Schurman, in his individual capacity only; Christopher Taylor, in his individual capacity only

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 14, 2025
Filed: July 29, 2025

_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.

_____

SMITH, Circuit Judge.

Justin Johnson, a pretrial detainee, was attacked by two other inmates while in protective custody. Johnson sued correctional officers for failure to protect him

under 42 U.S.C. § 1983 and for negligence under Missouri law. The district court[1] granted the officers' motion for summary judgment because it found that qualified immunity barred Johnson's § 1983 claims and that official immunity and the public duty doctrine barred his negligence claims. We affirm.

I. *Background*

Johnson was a pretrial detainee at the Jefferson County Jail (JCJ). Just after midnight on March 31, 2021, Zachary Haferkamp, another inmate, attacked Johnson in general population. Johnson informed JCJ staff and requested that they move him to protective custody. JCJ staff then identified Haferkamp as Johnson's "enemy" in Johnson's Integrated Jail Management System (IJMS) profile. R. Doc. 131, at 2. Based on that information, JCJ officers then moved Johnson to the "lockdown pod[]." *Id.* The lockdown pod housed inmates in protective custody, inmates punished for fighting, and minors.

Jacob Schurman and Christopher Taylor (collectively, "Officers") were correctional officers at JCJ when Johnson was attacked. On March 31, Taylor was the control officer responsible for opening cell doors. Schurman was the escorting officer responsible for moving inmates and notifying the control officer when doors should be opened or closed. According to Taylor, there was a "[c]ommon practice" at JCJ "that in the lockdown pod, only one cell door was permitted to be open at a time." R. Doc. 117-2, at 5. Schurman also acknowledged this "rule," R. Doc. 117-3, at 5, which was in place "for the safety of the inmates," *id.* at 8.

Later that same day, while in the lockdown pod, Johnson asked Schurman for permission to leave his cell for recreation time. At that time, two other inmates were out of their cells—Theodore Mathias and Damien Hedrick. Mathias and Hedrick were both in the lockdown pod because they were minors. Johnson did not know Mathias or Hedrick. Johnson's IJMS profile did not list either of them as his enemies.

---

[1]The Honorable Joseph S. Dueker, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Schurman instructed Mathias and Hedrick to return to their cells and instructed Taylor to open Johnson's cell door. Mathias and Hedrick did not comply and remained outside their cells. When Taylor opened the door, Johnson exited, and Mathias and Hedrick attacked Johnson, seriously injuring him. Johnson sustained a fractured spine and a forehead laceration from the attack.

Johnson then sued the Officers[2] in their individual capacities for (1) violations of his Eighth and Fourteenth Amendment rights for failure to protect him under 42 U.S.C. § 1983 and (2) negligence under Missouri law. The Officers moved for summary judgment. They argued that qualified immunity barred Johnson's § 1983 claims and that state-law official immunity and the public duty doctrine barred his negligence claims. The district court granted the motion and dismissed all of Johnson's claims.

First, in dismissing Johnson's § 1983 claims, the district court determined that he could not show a constitutional violation[3] and that the Officers were thus entitled to qualified immunity. Johnson's claim required him to show that the Officers were "deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." R. Doc. 131, at 5 (quoting *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020)). The district court found that prior to the surprise attack, there was no "substantial risk of harm to [Johnson] by Mathias and Hedrick." *Id.* at 7. "The attackers here were not known to be volatile, dangerous, violent, or in protective custody for previous violent episodes." *Id.* Johnson had no prior relationship with either attacker. The district court also said that Johnson could not show a general risk of harm because he had "no evidence showing that the assault

---

[2]Johnson also sued other JCJ employees but eventually dismissed all other defendants.

[3]The district court noted that it analyzed Johnson's claims under the Fourteenth Amendment, not the Eighth Amendment, because he was a pretrial detainee. But that "d[id] not affect" the analysis because pretrial detainees receive the same protection under the Fourteenth Amendment as convicted inmates under the Eighth Amendment. R. Doc. 131, at 2 n.2.

-3-

here was in the context of a substantial risk of inmate attacks that were longstanding, pervasive, well-documented, or expressly noted by prison officials in the past." *Id.*

The district court also held that Johnson failed to show that the Officers were "deliberately indifferen[t] to his safety." *Id.* at 8. This is a "subjective requirement" that requires Johnson to show that the Officers knew of the substantial risk and disregarded it. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The district court said that Johnson had "no evidence that [the Officers] had any knowledge that Mathias and Hedrick were a threat or risk of harm to Johnson or any other inmates." *Id.* "At best, [the Officers] were aware that Johnson was in protective custody. However, his protective custody related to safeguarding [him] from Haferkamp, specifically, not Mathias or [Hedrick]." *Id.* at 9. Because Johnson could not show deliberate indifference to a substantial risk of serious harm, the district court held that Officers were entitled to qualified immunity, and his § 1983 claims failed as a matter of law.

Second, the district court dismissed Johnson's negligence claims because the Officers were entitled to official immunity. "Official immunity protects public officials sued in their individual capacities for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Id.* at 10 (alteration omitted) (quoting *Davis v. Buchanan Cnty.*, 11 F.4th 604, 629 (8th Cir. 2021)). The district court noted that the "crux of Johnson's claims" was that the Officers "violated prison policy" by opening Johnson's cell "while Mathias and Hedrick were out of their cells." *Id.* at 11. It held that Johnson did "not establish[] that there was a prison policy requiring lockdown doors to be opened one at a time," *id.*, because the "Officer's testimony d[id] not reflect such a policy," nor was it in JCJ's written "policy on prisoner movement," *id.* at 9. The district court concluded that even if Johnson did establish a policy, official immunity shielded the Officers because their acts were discretionary. It noted that the Officers "retained authority to decide when and how to allow Johnson to have recreation time" and that their duties "were untimed and [had] variation in how they may be performed, thereby requiring them to exercise their discretion." *Id.* at 11–12.

-4-

The district court also dismissed the negligence claims based on the public duty doctrine. This doctrine says that "a public employee is not civilly liable for the breach of a duty she or he owes to the general public rather than to a particular individual." *Id.* at 12 (alteration omitted) (quoting *E.M. by & through McInnis v. Gateway Region Young Men's Christian Ass'n*, 613 S.W.3d 388, 396 (Mo. Ct. App. 2020)). But the doctrine does not apply "when injury to a particular, identifiable individual is reasonably foreseeable as a result of the public employee's breach of duty." *Id.* (quoting *E.M.*, 613 S.W.3d at 396). The district court said that the Officers "owed no particular duty to Johnson greater than that of the prison population at large" because it was not foreseeable that their omission would result in an attack on Johnson. *Id.* at 13. Because the negligence claims also failed as a matter of law, the district court granted the Officers' motion and entered final judgment against Johnson. Johnson appeals that order.

## II. *Discussion*

We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to Johnson, the nonmoving party. *See Hodges v. Dep't of Corr.*, 61 F.4th 588, 591 (8th Cir. 2023). "Summary judgment is appropriate when the record presents no genuine issue of material fact, and the movant is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56). Johnson argues that summary judgment was inappropriate because there were disputed material facts and that the district court thus erred in dismissing his § 1983 and negligence claims.

### A. *Failure to Protect*

The district court dismissed Johnson's § 1983 claims based on qualified immunity. Government officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (internal quotation marks omitted). We agree that the Officers are entitled to qualified immunity. Johnson has not shown that the Officers violated a constitutional right.

"The Eighth Amendment requires officials to 'provide humane conditions of confinement' by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates." *Hodges*, 61 F.4th at 591–92 (quoting *Farmer*, 511 U.S. at 832). Johnson was a pretrial detainee, so his "§ 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011). "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007). "To prove an unconstitutional failure to protect from harm, [Johnson] must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) a defendant was deliberately indifferent to the substantial risk of serious harm." *Hodges*, 61 F.4th at 592.

"Even if we assume for summary judgment purposes [that Johnson] presented sufficient evidence that he faced a substantial risk of serious harm, [he] fails to establish [that the Officers] knew of and were deliberately indifferent to the danger." *Holden*, 663 F.3d at 341. To show an unconstitutional failure to prevent harm, Johnson "must establish [that] the prison officials were deliberately indifferent to inmate health or safety." *Id.* "This is a subjective requirement, mandating the prisoner prove the official both knew of and disregarded 'an excessive risk to inmate health and safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837); *see also Hodges*, 61 F.4th at 592 ("An official is deliberately indifferent only if he actually knows of the substantial risk and fails to respond reasonably to it."). Deliberate indifference is "something more than negligence but less than actual intent to harm." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (internal quotation marks omitted). It "is the equivalent of criminal recklessness: the defendant must be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hodges*, 61 F.4th at 592 (quoting *Farmer*, 511 U.S. at 837).

The district court held that Johnson failed to show deliberate indifference because there was "no evidence that [the Officers] had any knowledge that Mathias and Hedrick were a threat or risk of harm to Johnson or any other inmates." R. Doc. 131, at 8. We agree. "We have held in several cases that qualified immunity for prison officials is appropriate when an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a surprise attack by another inmate." *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002) (finding no deliberate indifference because there was no evidence that the plaintiff "was the likely target of an impending attack by [the attacker]" and there was no evidence that the officer "had any actual knowledge" of altercations between the plaintiff and the attacker "much less that he knew [the attacker] would attack [the plaintiff]"); *see also Patterson v. Kelley*, 902 F.3d 845, 851–52 (8th Cir. 2018) (finding no deliberate indifference because the plaintiff was the victim of a "surprise attack" and there was no evidence "that any of the defendants were subjectively aware of, or deliberately indifferent to, a substantial risk of harm to inmate safety" (emphasis omitted)).

This case is similar to *Holden*, in which we held that a pretrial detainee who was injured in an altercation with his cellmates could not establish that "the prison officials knew of and were deliberately indifferent to the danger." 663 F.3d at 341. Holden was in protective custody, "which offered greater supervision and protection for vulnerable detainees." *Id.* But he "offered no evidence the prison officials had any knowledge of any specific danger posed to Holden by [his attacker] in the protective custody pod." *Id.* at 342. His cellmates did not previously threaten him, nor did Holden tell "any of the prison officials he felt threatened." *Id.* at 341. The officers were also not aware that his cellmates were violent. *Id.* at 342.

We conclude that Johnson cannot show deliberate indifference because he has not shown that the Officers both "knew of and were deliberately indifferent" to the "specific danger posed to [him] by [Mathias and Hedrick]." *See id.* at 341–42. As the district court said, "At best, [the Officers] were aware that Johnson was in protective custody." R. Doc. 131, at 9. But protective custody status does not automatically give rise to a failure-to-protect claim. *See Holden*, 663 F.3d at 341–

42. Further, "[t]here [was] no evidence that [Johnson] was the likely target of an impending attack by [Mathias and Hedrick]." *Tucker*, 276 F.3d at 1002. They had no previous relationship. The attackers were not known to be violent to anyone in the facility. The Officers may have known that Haferkamp attacked Johnson earlier that same day, but Haferkamp was not in the protective custody pod. The Officers' failure to secure Mathias and Hedrick before permitting Johnson to exit his cell, even if negligent, "falls short of deliberate indifference." *Patterson*, 902 F.3d at 852.

Johnson argues that the district court erred in finding no deliberate indifference because an officer may not "escape liability . . . by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Appellant's Br. at 14 (quoting *Farmer*, 511 U.S. at 843). This standard does not apply because these Officers were not "aware of an obvious, substantial risk to inmate safety." *Farmer*, 511 U.S. at 843. In explaining this standard, the Supreme Court pointed out that a prison official could not avoid liability if they were aware that "rape was so common and uncontrolled that some potential victims dared not sleep but instead would leave their beds and spend the night clinging to the bars nearest the guards' station" by arguing that "the officials could not guess beforehand precisely who would attack whom." *Id.* at 843–44 (cleaned up). Here, there was no obvious, substantial risk to inmate safety. Johnson has no evidence of other attacks, nor does he argue that these attacks were "common and uncontrolled" in the JCJ lockdown pod. *Id.* at 843 (internal quotation marks omitted).

Similarly, Johnson argues that he had evidence of deliberate indifference because the Officers knew that they had to follow the one-door policy, knew that the policy was for inmate safety, and even attempted to follow it by instructing Mathias and Hedrick to return to their cells. Thus, he argues that the Officers knew that failing to abide by the policy placed Johnson in danger. This argument boils down to the proposition that the Officers were deliberately indifferent because they knowingly violated the one-door policy. "We have repeatedly held that violations of prison

policy or regulations alone are not enough to establish deliberate indifference under the Eighth Amendment." *Vandevender*, 970 F.3d at 978. In the absence of an obvious risk, we have required that the inmate provide evidence that the prison official knew of "a specific threat posed by [the attacker]." *Patterson*, 902 F.3d at 851; *see also Holden*, 663 F.3d at 342. Johnson has no evidence that the Officers knew Mathias and Hedrick posed a specific threat to Johnson. The district court did not err in dismissing Johnson's § 1983 claims.

## B. *Negligence*

The district court dismissed Johnson's negligence claims based on (1) official immunity and (2) the public duty doctrine. Because we agree that the first applies, we need not address the second.

"Missouri applies the doctrine of official immunity to protect public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Torres v. City of St. Louis*, 39 F.4th 494, 507 (8th Cir. 2022) (cleaned up). "An act is discretionary where there is any room whatsoever for variation in when and how a particular task can be done." *Id.* (cleaned up). Official immunity, however, does not protect "public employees . . . [from] torts committed when acting in a ministerial capacity." *Letterman v. Does*, 859 F.3d 1120, 1125 (8th Cir. 2017) (quoting *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. 2008) (en banc)). A ministerial act is a "clerical" act that "compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 191 (Mo. 2019) (en banc). It is a task that "is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to the public official's judgment." *Id.* (cleaned up). "[W]hether [the Officers] are entitled to official immunity is a question of law we review de novo." *Letterman*, 859 F.3d at 1125 (emphasis omitted).

Johnson argues that the district court erred in applying official immunity because the one-door policy is ministerial, not discretionary. He contends that "the

Officers had no discretion in whether they had to put Johnson's attackers away before opening Johnson's door," Appellant's Br. at 16, and that the district court ignored that both Officers "testified [that] they did not have discretion in allowing inmates to remain out of their cells before opening a second cell," *id.* at 18. Johnson acknowledges that officers retain discretion in when to allow recreation time, but once they permit it, the officer "has a ministerial task: lock up all other inmates first, then let the person out." *Id.* The Officers argue to the contrary that their task was discretionary because it was "undoubtedly inexplicably intertwined with the movement of inmates throughout the jail facility." Appellees' Br. at 35. Because moving inmates requires officers to consider several factors like the inmate's history and their relationship with other inmates, the Officers contend that Schurman had to "use his own judgment to determine when to instruct the cell door to be opened" and Taylor had to "use his own judgment to make the decision as to when to push the control to open the door." *Id.* at 36.

We conclude that the Officers are entitled to official immunity because compliance with the one-door policy involves discretionary acts. "The central inquiry is not whether the law confers a duty to act but, instead, whether the public official retains any discretion in completing the act." *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 495–96 (Mo. 2024) (emphasis omitted) (cleaned up). Thus, it is immaterial that the Officers said that they did not have discretion to comply with the one-door policy. The question is not whether the Officers had a choice to follow the rule but whether there was "any room whatsoever for variation in when and how [this] particular task c[ould] be done." *Torres*, 39 F.4th at 507 (internal quotation marks omitted). We conclude that there is.

Johnson acknowledges that "the caselaw has shown that . . . inmate movement is a discretionary function" but argues that "the specific sequence of opening Johnson's cell door . . . does not involve a discretionary act." Reply Br. at 16. He contends that the task is "simple—return other inmates, close their door, then open the second." *Id.* at 17. That sequence demonstrates when there is room for variation in the task: The act of securing inmates involves professional decisions of inmate

movement, and officers can do that in different ways. The task is not only pressing buttons upon a given set of facts. Instead, it involves communication between two officers and requires at least one officer to ensure that inmates are indeed secure before opening another door. *Cf. Love*, 689 S.W.3d at 496 (finding that the "act[] of ensuring placement of [a] protective vehicle" was not clerical or ministerial because "[t]o ensure" is inherently discretionary).

Thus, viewing the record in the light most favorable to Johnson and assuming that he has shown the existence of a one-door policy, we hold that the Officers are nonetheless entitled to official immunity because the task was discretionary. The reasoning and variation that officers use when securing inmates to comply with a one-door policy is discretionary. The district court did not err in dismissing Johnson's negligence claims.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____